Larrabee *v.* Woodman.

---

† LARRABEE *versus* WOODMAN.

Defendant quitclaimed to plaintiff his interest in a township of land, after there had been contracts to sell certain lots to settlers, and the plaintiff gave a bond to save him harmless from his obligations and contracts pertaining to the lots sold, and was to receive the sums then due, or what might be due from the settlers on their contracts ; and the bond also recited that one of the settlers owed *about* $130, when in fact he owed only $30 : —*Held*, in an

action to recover the difference, that the bond showed no undertaking on the part of the defendant that such sum should be collected, but that the parties left the sum due from settlers as uncertain, and that no action would lie against defendant for money by him received prior to the contract.

On Report from *Nisi Prius*, Hathaway, J., presiding.

Assumpsit, on an account annexed, and for money had and received. The writ also contained a count as follows: "For that plaintiff agreed to hold said defendant harmless of a certain bond of Woodman and others to one Gelerson, and said defendant in consideration promised that said Larrabee should have and collect the sum due from said Gelerson to entitle him to a conveyance under said bond, and that said sums should be about $130: and now said plaintiff avers that at said very time said Charles had collected of said Gelerson all that there was to be paid by said Gelerson and said Larrabee long since conveyed to said Gelerson and held said Woodman harmless of same, whereby said defendant was, by his agreement, bound to pay said plaintiff said sum as aforesaid and interest."

The defendant, in connection with two other persons, owning a township in Aroostook county, the proprietors had sold certain lots and given bonds to convey the same on payment of the consideration; and had mortgaged the same to one Lewis & Woodman to secure certain notes of hand.

The plaintiff purchased the defendant's interest, and according to the testimony, "was to step into Woodman's place, and Woodman was to step out."

On the trade being made, the plaintiff gave to defendant a bond, the sums represented as due from settlers being taken from defendant's statements, and that part of it bearing upon this case was as follows: —"Now whereas said Charles has this day quitclaimed me his interest in said land, I do therefore, in consideration thereof, promise and agree with said Charles Woodman, to hold him harmless of one third part in amount of said notes now remaining unpaid, meaning to keep said notes and mortgage to uphold my

own title and to enforce said notes if I please, but to make, to said Woodman, payment of such sum or sums as he may be bound to pay, and actually pay, from their enforcement in any way against him, meaning this agreement shall apply only to such notes specified in said mortgage, as are at this date unpaid in part or in the whole.  *  *  *  And for said consideration, I further agree to hold him harmless of any bonds, agreements or obligations, for the conveyance of small lots in said township, being mostly or wholly settler's lots, to the following individuals, to wit: — Josiah Gelerson, one lot of one hundred and fifty acres, according to the bond given, *  *  *  *  said Charles to be held harmless of his obligation to said settlers, by me, and I am to receive and be entitled to have all sums due, or that will become due from said settlers, as consideration money of said lots, there being due about $130 from said Gelerson, Cummings uncertain, Leighton about $54, from said Tuck about $450.

This bond was made in May, 1850. In July, 1849, the defendant received from Gelerson, $166,02; and at the time the bond was made, Gelerson, in fact, owed for his land only thirty dollars, which he afterwards paid to plaintiff, and obtained his deed.

The case was submitted to the full Court, with power to draw inferences as a jury might, and render judgment by nonsuit or default.

*Kent,* for defendant.

The contract was that Larrabee was to step into defendant's place. The fact of more or less being due from Gelerson, whether $30 or $130, does not appear to have been any part of, or inducement to, the contract.

Larrabee recites, that *about* $130 was *supposed* to be due from Gelerson. Had it turned out, in this or either of the other cases named, that a larger amount than was supposed, was found actually due, Woodman could not have claimed the excess.

It was, in fact, a jumping trade. Woodman collected not a cent after the trade.

If the money is claimed on the ground of misrepresentation, the action is not in the proper form.

The bond of plaintiff is not signed by defendant, and does not bind him.

*Rowe & Bartlett,* for plaintiff.

It is clear that in equity and good conscience, defendant holds $100 which belongs to plaintiff, whether he received it before or after the contract. On all the facts, he must be held to have received it after. He represented it then to be due, and ought not to set up his own fraud. He may have made a mistake in dating the receipt.

But if he received it before the contract, then he held the money from the time of such contract, as plaintiff's trustee.

By mistake, arising from misrepresentation of Woodman, the plaintiff paid him more money than he was bound to pay on the basis of the trade. That excess can be recovered under the money count.

APPLETON, J. — The defendant, having an interest in a township of land in the county of Aroostook, on the 25th May, 1850, quitclaimed the same to the plaintiff, who then, in consideration therefor, gave him back a bond conditioned, among other things, to save him "harmless of any bonds, agreements or obligations for the conveyance of small lots in said township" * * "being mostly or wholly settlers' lots, to the following individuals, to wit, Josiah Gelerson, one lot of one hundred and fifty acres, according to the bond given," and to other individuals enumerated in the plaintiff's bond to the defendant; "said Charles to be held harmless of his obligation to settlers by me; and I am to receive, and be entitled to receive, all sums *due,* or that *may be due,* from said settlers, as consideration money of said lots, there being due *about* one hundred and thirty dollars from Gelerson," &c. Upon settlement with Gelerson, it appeared that the sum due from him was about thirty dollars, which he paid, and received from the plaintiff a deed in conformity with the terms of his bond from the defendant.

This suit is brought to recover the difference between the sum paid and one hundred and thirty dollars, "about" which amount, it would appear from the plaintiff's bond, he expected to have been due.

The parol evidence introduced in the defence tended to show that the transaction was this, "the plaintiff was to step into Woodman's place, and Woodman was to step out, that was the whole bargain." The amounts supposed to be due were stated as matters of estimate, but not of certainty. In such a bargain, there would necessarily be very considerable uncertainty as to the result.

The plaintiff claims to recover upon a special contract, according to which, as he alleges, the defendant "promised that said Larrabee should have and collect the sum due from said Gelerson, to entitle him to a conveyance under said bond, and that said sum should be *about* one hundred and thirty dollars." The parol evidence of the plaintiff fails to show that there was any such contract, nor is its existence a legal inference from the terms of the bond given by the plaintiff to the defendant. No engagement was made by the defendant in that bond. The engagement was rather made with and to him.

When the money indorsed on the bond was received by the defendant, it was as much his money as any money in his hands, and belonging to him, nothing has since occurred by which the defendant has agreed to transfer that amount to the plaintiff.

The use of the word "about" shows that the amount due was uncertain. By the bond the plaintiff was to have "all sums due, or that may be due." What those sums might be, both parties chose to leave indefinite. Had the parties agreed upon a definite sum, or made their negotiation upon the basis of some fixed amount being due, nothing was easier than for the plaintiff to have required a guaranty for such amount, and then his rights would have been definitively settled. No sum was agreed upon, and the inference from the

whole transaction is, that none was intended to be fixed or determined as and for the sum due from the settlers.

*Plaintiff nonsuit.*

